BRACKETT *v.* QUEEN.

Opinion delivered February 18, 1924.

1. MASTER AND SERVANT—ASSUMED RISK.—In an action by a servant for personal injuries, if it appears to be clear that the servant had knowledge of and appreciated the danger incident to his work, or the danger is so obvious or apparent that the knowledge of the danger and appreciation thereof should be imputed to him, then the court should declare as a matter of law that the servant is not entitled to recover.

2. MASTER AND SERVANT—ASSUMED RISK.—Assumption of risk is not predicable upon knowledge alone of the conditions, but it must further appear that the danger was or should have been appreciated by the servant in order that it may be said that there was an intelligible consent on his part.

3. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Where an employee, 18 years old and wholly uneducated and inexperienced, was injured while operating the bull-wheel in a sawmill, the question whether he assumed the risk was properly left to the jury.

Appeal from Poinsett Circuit Court; *W. W. Bandy,* Judge; affirmed.

*John W. Scobey,* for appellant.

Plaintiff's injury was the direct result of his own contributory negligence. The court should have directed a verdict for the defendant. 147 Ark. 95; 135 Ark. 563; 125 Ark. 480; 107 Ark. 341. The injury occurred, not by reason of any defect in the machinery, nor by attending to the duties in the manner he was directed to do, but

by reason of plaintiff's adopting a plan different from the way in which the wheel was to be operated. 125 Ark. 480, 484.

*J. J. Mardis,* for appellee.

The cases relied on by appellant have reference to injured employees of intelligence and experience in the particular in which they were engaged; but here there is no evidence that the employee had experience, but on the contrary that he was only 18 years old when hurt, uneducated, illiterate and inexperienced, had worked at a saw-mill only two weeks, and was not advised that it was dangerous to work about the bull-wheel. 147 Ark. 253. Appellee neither assumed the risk nor was guilty of contributory negligence. 158 Ark. 379; 157 Ark. 245; 86 Ark. 587; 82 Ark. 558; 79 Ark. 490; 61 Ark. 141.

HART, J. W. P. Queen sued J. M. Brackett to recover for personal injuries occasioned by the plaintiff's foot being caught and crushed by a bull-wheel which he was operating for the defendant, and which injuries were caused by the failure of the defendant to warn him of the dangers incident to the work.

The case was tried before a jury, which returned a verdict for the plaintiff, and from the judgment rendered in his favor the defendant has duly prosecuted an appeal to this court.

The only assignment of error relied upon for a reversal of the judgment is that the evidence is not sufficient to support the verdict. Therefore it is only necessary to abstract the evidence in favor of the plaintiff.

W. P. Queen, the plaintiff, was the principal witness for himself. According to his testimony, he was injured while in the employment of the defendant, J. M. Brackett, in August, 1918, and at that time he was eighteen years old. The plaintiff had been working at the sawmill of the defendant for about two weeks at the time he was injured. The defendant first put the plaintiff at work tailing the edger, and later at operating the cut-off saw. The man that was operating the bull-wheel became sick, and the defendant told the plaintiff to operate the bull-

wheel and do the best he could until he could get some one else. At first it was the duty of the plaintiff to operate the bull-wheel, and another man was down in the river whose duty it was to hook the cable attached to the bull-wheel to the logs floating in the river. When the cable was attached to a floating log, a signal would be given to the plaintiff, and he would turn the lever so that the bull-wheel revolved and pulled the log from the river up the incline to the place where it was to be unloaded. Then he would stop the bull-wheel, and roll the log over on the saw-carrier. On the day the plaintiff was injured there was no one to help him. The plaintiff went down to the river and fastened the cable to a log. A Mr. Smothers happened to be on the bank near the bull-wheel, and he ran the lever. The plaintiff came up with the log, and it passed the place where it ought to be stopped, about six inches. The plaintiff jumped over the log to reach the lever and stop it. In doing so he set his foot upon the bull-wheel, and one of the spokes of the wheel caught his toe and ground his leg up. The plaintiff did not procure Smothers to turn the lever of the bull-wheel. The plaintiff is unable to read and write, and is wholly uneducated. The defendant came to see him after he was hurt and after his leg had been amputated. The defendant told the plaintiff that he knew that the bull-wheel was unsafe; that he was pulling a log out of the river one day, and a fellow had his foot where the plaintiff got his caught, and it had pinched his foot. The defendant further stated that he had intended to fix the bull-wheel, but had not done so. The bull-wheel was about four feet in diameter, and about two and a half or three feet of it was above the floor of the mill.

On cross-examination the plaintiff stated that there was a little platform above the floor, and that he went around Smothers to get to the lever. In his hurry to get to the lever and stop the log, he set his foot up in the bull-wheel, and it was caught. No one had given the plaintiff any instructions about his duties in operating

the bull-wheel or told him of any danger attached to its operation. It was shown that, if any one stood in front of the bull-wheel to operate it, there was no danger of being caught in it.

In asking for a reversal of the judgment upon the evidence for the plaintiff, counsel for the defendant relies upon the doctrine laid down in *Hunt* v. *Dell,* 147 Ark. 95. In that case a young man twenty years of age brought suit for injuries received while helping to turn two fly-wheels to be used in starting an engine. The two fly-wheels were attached to the engine, and were about three and a half feet apart. The engine was a sixty-horse-power gasoline engine, and it was started by turning the fly-wheels by hand. It was dangerous to stand between the fly-wheels, because they were so close together that if the person who was turning them slipped there was no way to get out. It was held in that case that the plaintiff, as a matter of law, assumed the dangers incident to his work. The court said that the danger in going between the fly-wheels to assist in turning them was an obvious and patent danger, under the circumstances. The master had not instructed the servant in that case of the danger in going between the wheels to turn them, but the servant himself had often gone between the wheels to assist in starting the engine in the same position he was in at the time the injury occurred. Hence it was said that the law attributed to him a knowledge and appreciation of the danger incident to the work in which he was engaged.

The rule is well settled in this State that, when it appears to be clear that the servant has knowledge of and appreciates the danger incident to his work, or that the danger is so obvious or apparent that knowledge of the danger and appreciation thereof should be imputed to him, then the court should declare, as a matter of law, that the servant is not entitled to recover.

It is equally well settled that assumption of risk is not predicable from knowledge of the conditions alone. It must further appear that the danger was or should

have been appreciated by the servant in order that it may be said that there was an intelligent consent on his part. While. the appreciation of the danger is often inferred from complete knowledge on the part of the servant, yet, if the knowledge possessed by the servant is not such as to necessarily make him appreciate the danger of his work, his action for injuries will not be barred.

In the application of the rule stated to the facts in the case at bar, with all legal and reasonable deductions therefrom, it cannot be said, as a matter of law, that the plaintiff was not entitled to go to the jury in this case. He was required to do the work which was usually done by two men. He was only eighteen years of age, and was wholly uneducated. He had only been at work at the mill for about two weeks, and had been operating the bull-wheel for a much less period of time. He was not warned about the dangers incident to his work. We do not think that it can be said, as a matter of law, that he knew and fully appreciated the dangers incident to operating the bull-wheel. It is one thing to say that he knew that he would be hurt if any part of his body was caught in the revolving wheel, and another to say that he was bound to know that it was dangerous to work near the bull-wheel. He had been told to do the best he could, by the defendant, who had employed him. As we have just seen, he was trying to do the work of two men, and, when the log was carried beyond the point where it should have been stopped and unloaded, it was the natural impulse of the plaintiff to try to get to the lever and stop the passage of the log. He had hurriedly run around Smothers in order to do this, and we do not think it should be said, as a matter of law, that he knew and fully appreciated the danger. He had a right to rely, to some extent, upon the advice of his master, who told him to go ahead and do the work as best he could until he could get some one else. This view is strengthened when we consider that the defendant went to see the plaintiff, after he was injured, and told him that he knew

the bull-wheel was unsafe, because, some time before that, another man had got his foot pinched in it while running it.

Therefore we are of the opinion that the court did not err in refusing to instruct a verdict for the defendant, and the judgment will be affirmed.