Patsi STALTER *v.* Sandy AKERS

90-131                                              798 S.W.2d 428

Supreme Court of Arkansas
Opinion delivered November 12, 1990

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Richard N. Watts* and *Brian Allen Brown*, for appellant.

*Gary Eubanks & Associates*, by: *Darryl E. Baker* and *James Gerard Schulze*, for appellee.

OTIS H. TURNER, Justice. The appellant, Patsi Stalter, owned a house that she leased or rented to Jason and Laura Howard. The appellee, Sandy Akers, was the Howards' neighbor and a frequent visitor to their home.

On the evening of June 15, 1988, Jason Howard asked Mrs. Akers to come over to the Howards' residence to talk to his wife, Laura. The purpose of the visit was to discuss a shocking and dangerous "practical joke" played by the Howards on a young boy, who was an overnight guest in the Akers's home. Upon being told the details of the "joke," the appellee became angry, picked up the Howards' two small children, and started to return home. When she reached the bottom step of the Howards' porch, a concrete block placed as a temporary substitute for a broken step gave way, and she fell, breaking her leg.

The appellee was aware that the bottom step leading to the Howards' porch was broken. Mrs. Akers testified that she had overhead a conversation in which the appellant had told her tenant, Laura Howard, that she would repair the broken step.

The appellee sued the Howards and their landlord, the appellant, to recover for her injuries and expenses. The trial court entered a default judgment against the Howards, and the jury returned a verdict of $16,000 for Mrs. Akers against the appellant/landlord.

On appeal, the appellant argues three issues for reversal: first, the court erred in submitting the issues to the jury and, after

judgment, in failing to set the judgment aside because the appellee was a licensee and because the hazard was open and obvious and no duty was thus owed to the appellee; second, the court erred in submitting AMI 1104A to the jury because the appellant's gratuitous promise did not create a legal duty owed to the appellee; third, the court erred in refusing to grant a directed verdict because there was no evidence of negligence by the appellant.

We perceive the single real issue in this case to be whether, in the absence of a contract to maintain, an owner of property leased to another is subject to *any* liability for injuries occurring to third persons as a result of defective conditions of the property. If liability does attach, the question becomes whether the status of the injured third party (invitee, licensee, or trespasser) is relevant to a determination of the duty owed by the owner to the third party.

We first dispose of the question concerning the "legal status" of the appellee upon the premises. That status was immaterial in determining the rights and obligations between these parties so long as the appellee was on the premises with the consent of the lessee. There is no doubt that, under the facts of this case, the injured appellee was on the property with the consent of Mrs. Howard, the lessee.

Whether the appellant/landlord may incur liability to the third party — the appellee — presents a more complex problem. Here, the record indicates there was evidence that the appellee overheard a conversation between the appellant and her tenant in which the appellant promised to repair the defective steps. The appellant argues that, in the absence of facts establishing a a legal obligation to fulfill the promise to repair, the promise is gratuitous and insufficient to create a duty owed to persons on the demised property with the consent of the lessee.

We have found no Arkansas case, and the parties cite none, where we have expressly held that a contract to repair or maintain the premises is necessary to impose liability on the landlord for injury to a third person on the leased premises. However, we have so indicated in a number of instances. In *Terry* v. *Cities of Helena and West Helena*, 256 Ark. 226, 506 S.W.2d 573 (1974), the lessee requested the lessor to repair the leased buildings. This

court looked to the lease agreement which made no mention of the lessor's duty to repair, and stated: "It is well settled in Arkansas that unless a landlord agrees with his tenant to repair leased premises, he cannot, in the absence of statute, be compelled to do so or be held liable for repairs." 256 Ark. at 236, 506 S.W.2d at 578.

In a case involving whether or not a sublessee was entitled to summary judgment for the negligence of a sublessor resulting in personal injury because of failure to repair the leased premises, the question turned upon whether the terms of an oral sublease imposed a duty on the sublessor to repair. We there held that the sublessee's affidavit, stating that the sublessor agreed to make repairs and told the sublessee to call him if any repairs were needed, was sufficient to raise a question of fact regarding the duty, and it was error for the trial court to grant summary judgment. *Hurst* v. *Feild*, 281 Ark. 106, 661 S.W.2d 393 (1983). In *Majewski* v. *Cantrell*, 293 Ark. 360, 737 S.W.2d 649 (1987), the appellant argued that at the time of the injury, no lease agreement existed between the lessor and the lessee. There was evidence of a previous lease, long expired, requiring the appellant to repair. The lessor admitted having sent a worker out to repair the roof on numerous occasions. We held there was an agreement to repair.

Section 357 of the Restatement, Second, Torts, provides, in pertinent part:

> A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the *consent* of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract.

The courts have held that a gratuitous promise to repair, unsupported by consideration, is not sufficient to impose upon the landlord a duty to carry out the promise. J. Page, *The Law of Premises Liability*, Section 9.9. Restatement, Second, Torts § 357 includes the comment that "[T]he rule has no application where there is no contractual obligation, but merely a gratuitous promise to repair, made after the lessee has entered into possession."

We believe the better rule to be that the injured third party must establish a landlord's contractual duty to repair a defect in the premises before he may recover for an injury suffered upon leased property over which the landlord has relinquished possession and control to a tenant.

Under this analysis, the giving of Arkansas Model Instruction No. 1104A was inappropriate without amendment.

Reversed and remanded.

GLAZE, J., not participating.